**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**WESCO INSURANCE COMPANY**                                                  **PLAINTIFF**

**V.**                                                  **CIVIL ACTION NO. 3:20-CV-422-HTW-LGI**

**STATE AUTO PROPERTY AND**
**CASUALTY INSURANCE COMPANY,**
**HOUSTON SPECIALTY INSURANCE**
**COMPANY, B&G WOOD, INC., B&G**
**TRANSPORT, INC., JEFFREY PRUITT,**
**SERA WRAGG, AND JEROME RASH**                                **DEFENDANTS**

---

**ORDER**

---

On January 2, 2019, an automobile accident occurred in Neshoba County, Mississippi, between a 2015 Dodge Ram Pickup ("Dodge Ram") driven by Jeffery Pruitt and a 1994 Peterbilt ("Peterbilt") driven by Jerome Rash.  Sera Wragg was a passenger in the Peterbilt.  The ensuing litigation occasioned by the mishap not only brought together the above individuals, it caused the inclusion of the owners of the vehicle and the insurance companies and their policies which allegedly covered these vehicles.

Consequently, this matter features various different insurance companies, - three in all- each with its own separate automobile insurance policy: Plaintiff Wesco Insurance Company ("Wesco"); Defendant Houston Specialty Insurance Company ("HSIC"); and Defendant State Auto Property and Casualty Insurance Company ("State Auto"). Before this court are three (3) *Motions for Summary Judgment* **[Docket nos. 29, 44, and 67]**, filed by each of these three insurance companies,  seeking to be dismissed from this action, and a *Motion in Limine* **[Docket no. 53]** filed by Defendant State Auto. This court, having reviewed thoroughly the parties'

motions, responses, and rebuttals, and having carefully analyzed the relevant jurisprudence, finds as follows.

## I.  JURISDICTION

This court first must determine whether it has subject matter jurisdiction. Wesco's Complaint alleges that this court possesses federal subject matter jurisdiction by way of diversity jurisdiction as codified under 28 U.S.C. § 1332[1].

According to the Complaint, the Primary Parties to this matter are: Plaintiff Wesco, which is an insurance company organized under the laws of the State of Delaware, with its principal place of business in the State of New York; Defendant HSIC, an insurance company organized under the laws of the State of Texas, with its principal place of business also in Texas; and Defendant State Auto, an insurance company organized under the laws of the State of Ohio, with its principal place of business in the State of Ohio.

Wesco's Complaint also names the following Nominal Parties as defendants:

1. Defendant B&G Wood, Inc. ("B&G Wood), a Mississippi corporation, with its principal place of business in Philadelphia, Mississippi. B&G Wood is the named insured on the Wesco insurance policy;

2. Defendant B&G Transport, LLC ("B&G Transport"), a Mississippi corporation, with its principal place of business also in Philadelphia, Mississippi. B&G Transport is the named insurer on the HSIC insurance policy;

---

[1] (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

    (1) citizens of different States;

28 U.S.C.A. § 1332 (West).

3. Defendant Jeremy Pruitt ("Pruitt"), an adult resident citizen of Columbus, Mississippi. At the time of the underlying accident, Pruitt was driving the Dodge Ram, one of the vehicles involved in the underlying automobile accident.  Pruitt is an employee of B&G Transport, and a listed driver on the HSIC policy;

4. Defendant Sara Wragg ("Wragg"), an adult resident citizen of Louisville, Mississippi. Wragg was a passenger in the Peterbilt, the second vehicle involved in the underlying accident; and

5. Defendant Jerome Rash ("Rash"), an adult resident of Louisville, Mississippi. Rash was the driver of the Peterbilt involved in the underlying accident.

Wesco, by way of its Complaint [Docket no. 1], asserts that it does not expect a need for the Nominal Parties to take any positions or respond to the Complaint, since there is no question that insurance coverage for the accident exists.  The Nominal Parties, nonetheless, are entitled to notice and an opportunity to be heard if they determine any of their interests are adversely affected. Wesco further asserts that it seeks no relief against these parties other than "being bound by the outcome of the suit to determine what policy or policies provide coverage for claims made or anticipated".

This court finds that complete diversity of citizenship here exists, since none of the plaintiffs resides in the same state as any of the defendants. [2] Additionally, the undisputed amount in controversy is stated on the face of the Complaint to be in excess of $75,000, and this is not

---

[2] "If the case involves more than one plaintiff and more than one defendant, the court must be certain that all plaintiffs have a different citizenship from all defendants."  *Getty Oil Corp. v. Ins. Co. of f. Am.*, 841 F.2d 1254, 1258 (5th Cir.1988) (citing *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 548–49 (5th Cir. Unit A Dec.1981)). (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267, 2 L.Ed. 435 (1806)).

disputed by any party.  This court, therefore, concludes that the requirements of federal subject matter jurisdiction based on §1332 diversity of citizenship are met.

Inasmuch as this court is exercising diversity of citizenship subject-matter jurisdiction, this court, sitting in Mississippi, will apply Mississippi's law to the substantive issues in accordance with the *Erie* Doctrine. *Erie v. Tompkins*, 304 U.S. 64, 78-79, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under the *Erie* Doctrine, federal courts sitting in diversity must apply state substantive law and federal procedural law. *Foradori v. Harris*, 523 F.3d 477, 486 (5th Cir. 2008) (*citing Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 426-427 (1996)).

## II.     STATEMENT OF FACTS

### A.  *The Underlying Accident*

On January 2, 2019, an automobile accident occurred in Neshoba County, Mississippi between the Dodge Ram driven by Pruitt and the Peterbilt driven by Rash. As stated *supra,* Wragg was a passenger in the Peterbilt. The Mississippi Uniform Crash Report [Docket no. 67-3] lists B&G Wood as the owner of Dodge Ram and Mr. Craig Greer ("Greer")[3] as the owner of the Peterbilt driven by Rash.

Donald Grantham ("Grantham") is the President and 100% owner of B&G Wood. Grantham is a part-owner and member of B&G Transport and reflected on the Mississippi Secretary of State's 2018 Annual Report as B&G Transport's registered agent for service of process. [Docket no. 37-1].  The Purchase Agreement, signed by Grantham (the President and 100% owner of B&G Wood.), identifies B&G Wood as the Buyer of the Dodge Ram.  [Docket no. 37-2], and at the time of the underlying accident, in 2018, the Certificate of Title for the Dodge Ram named B&G Wood as the vehicle's titleholder. [Docket no. 37-4].

---

[3] Greer has not been made part of the lawsuit *sub judice*.

### B. *The Subject Insurance Policies*

Implicated in this case are two commercial insurance policies- the Wesco Policy issued to B&G Wood, and the HSIC Policy issued to B&G Transport, and one personal insurance policy- the policy issued by State Auto to Grantham.

1. Wesco Automobile Insurance Policy

Wesco issued an automobile insurance policy to B&G Wood, with a limit of liability of $1 million per accident, and a policy period of February 9, 2018, to February 9, 2019 ("Wesco Policy"). The Wesco Policy contains Business Auto Coverage Form CA 00 01 10 13, which affords liability coverage for all vehicles owned by B&G Wood.

The Wesco Policy provides several available coverages for vehicles specifically listed in the schedule. The Wesco Policy further provides liability coverage for all vehicles owned by B&G Wood, regardless of whether they are specifically listed. According to the Wesco policy, B&G Wood paid over $135,000 in premiums for the applicable policy year (2/9/2018 through 2/9/2019). The Wesco Policy also contains an Other Insurance provision which states:

5. Other Insurance
a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance.

[Docket nos. 1-2 and 1-3].

2. HSIC Automobile Insurance Policy

The HSIC Insurance policy includes certain named drivers of B&G Transport, including Pruitt. According to the HSIC insurance policy, B&G Transport paid $174,970 in premiums for the applicable policy years. The HSIC policy affords Liability Coverage for certain "Symbols":  7, 8 and 9. Symbol 8 is "Hired Autos" Only, which provides liability coverage under the HSIC policy for:

Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households.

Symbol 9 is Non-owned "Autos" Only, and states:

Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs.

[Docket no. 1-6].

3.   State Auto Insurance Policy

Prior to the subject accident, State Auto issued a Personal Auto Policy, (the "State Auto Policy"), to Grantham, with a limit of liability in the amount of $1 million per accident, and a policy period of November 25, 2018 to November 25, 2019.  The State Auto Policy specifically identifies the Dodge Ram as a covered auto in the Declarations.

The State Auto Policy provides, in part:

We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the "insured". We will settle of defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty addition to our limit of liability, we will pay all defense cost. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgment or settlements. We have a duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

"Insured as used in this Part means…

2. Any person using "your covered auto."

[Docket 1-5 at p. 14].

### C.  Wesco's Complaint for Declaratory Judgment

On June 25, 2020, Wesco filed its Complaint for Declaratory Judgment [Docket no. 1] in this federal forum "to seek resolution of the duties, obligations and coverages, if any, owed to its insureds under its policy of insurance issued to B&G Wood, Inc."  Wesco alleges that, "due to an oversight", the Dodge Ram was incorrectly titled in the name of B & G Wood.  Wesco contends that the Dodge Ram driven by Pruitt, an employee of B & G Transport, was one of the "listed vehicles" on the personal State Auto Policy issued to Grantham. Wesco further asserts that Grantham had merely allowed Pruitt to use his personal vehicle to "perform an errand for B & G Transport".

The Complaint next contends that upon discoverin the Dodge Ram Pickup he purchased for his own personal use was insured under the commercial auto policy issued by Wesco to B & G Wood,…Grantham removed the Dodge Ram…from the Wesco Policy in July of 2018 [prior to the underlying accident], and added it on his personal auto policy with State Auto".  Wesco, at that point, sent B & G Wood a premium refund of $5,149.00, based, in part, on the removal of the vehicle from the Wesco Policy.  Wesco attached an endorsement removing the vehicle from the Wesco Policy as an exhibit [Docket no. 1-2] to its Complaint.

In further support of its above allegations, Wesco attached with its Complaint an "Affidavit of Donald Grantham" [Docket no. 1-1].   This Affidavit states, as follows:

1.      … I am the President and 100% owner of B&G Wood, Inc. …

2.      On or about December 22, 2014, I bought the above described 2015 White Dodge Ram Pickup …

3.      I bought this truck as my personal vehicle not for any of my businesses.

4.      At the time I did not realize the vehicle was being titled to my company, B&G Wood Inc., and I intended it be titled to me personally.

5.      Around July of 2018 we realized this pickup truck was on the B&G Wood, Inc. policy and because it was my personal pickup and not used in my business it was transferred to my personal auto policy with State Auto.

6.      It was my intent to title the 2015 pickup to myself and not my business and when we discovered it was on the wrong auto insurance policy, I had that changed.  It simply slipped through the cracks that we did not change the title as well.

7.      Because I own B&G Wood, Inc. I was able at any time to cause the pickup truck to be transferred to my personal name instead of the business and if I had realized the mistake I would have made that transfer.

8.      I was at the time of this accident in January of 2019 personally the owner of the 2015 Dodge pickup and I allowed Jeffery Pruitt who works for another company I own a part interest in, B&G Transport, LLC, to use my personal pickup while doing work for that company.

[Docket no. 1-1, pp. 1-2].

In its prayer for relief, Wesco asks that this court issue a Declaratory Judgment in this matter, declaring that the Wesco policy does not provide coverage for any claims arising out of this accident. This is so, says Wesco, because the underlying accident involved an employee of a company other than one Wesco insures, and because said employee was driving a vehicle covered by an insurer other than Wesco.

Wesco finally asserts that "while not necessary to the declaratory relief sought by Wesco as to its policy, to resolve the issue of coverage for the accident this court is urged to consider declaring that the polices of State Auto and [HSIC] provide coverage for Pruitt and B & G Transport related to the subject accident and that  State Auto and HSIC a 'duty to defend' Pruitt and B & G Transport or settle any claims arising from this accident".

## III.      STANDARD OF REVIEW

A party is entitled to summary judgment under Fed. R. Civ. P. 56 if it can demonstrate that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986).  Summary judgment is appropriate

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  F. R. C. P. 56(c).  Therefore, the threshold question is: are there any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The court must view the facts, evidence and all inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). "A genuine dispute as to a material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Rogers*, 755 F.3d at 350 (internal quotations omiited). "Summary judgment is improper where the court merely believes it unlikely that the non-moving party will prevail at trial." *McDonald*, 2005 WL 2474701, at *3 (*citing National Screen Serv. Corp. v. Poster Exchange, Inc.*, 305 F.2d 647, 651 (5th Cir. 1962) ). "[C]onclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial." *Id*. (*citing TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) ); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997).

Once the movant has satisfied its initial burden, the burden shifts to the non-movant to produce evidence indicating the existence of a genuine issue of material fact for each essential element of its case. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246-47 (5th Cir. 2003). The non-movant is not entitled to rely solely on his pleadings, but must set forth specific facts showing there is a genuine issue for trial." *DirecTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

## IV.    ANALYSIS

### A.  The Parties' Respective Positions

No party herein disputes that liability coverage exists for the underlying accident. The only issues before this court, according to the parties, are: (1) which insurance policy provides the primary coverage; and (2) what are the duties and responsibilities, if any, of the remaining insurance carriers.  Further, is no dispute among the parties that State Auto received premiums for the Dodge Ram and that that State Auto already has made payments to Grantham, as well as Greer for damages resulting from the underlying accident.

Wesco argues that the Dodge Ram was owned by Grantham (State Auto's insured); State Auto counters that the Dodge Ram was actually owned by B&G Wood (Wesco's insured).  If Grantham is deemed the rightful owner of the Dodge Ram, the State Auto Policy is primary. Alternatively, if B&G Wood is the Dodge Ram's owner, the Wesco Policy is primary.  HSIC's insured, B&G Transport., did not own Dodge Ram, and there is no allegation, argument, or dispute on this point; however, the HCIS Policy contains provisions, which may provide coverage, either co-primary or excess, to its insured, B&G Transport.

Under Mississippi law, "the construction of an insurance contract is limited to examining the policy." *Am. States Ins. Co. v. Natchez Steam Laundry*, 131 F.3d 551, 555 (5th Cir. 1998) (citing *Employers Mut. Cas. Co. v. Nosser*, 164 So. 2d 426, 430 (Miss. 1964)).  Moreover, the parties have, in various briefs, alluded to "the longstanding rule in Mississippi…that the insurer for the ***owner*** of the vehicle involved in the accident is the primary insurer." (emphasis added). This rule was established in *Travelers Indemnity Co. v. Chappell*, 246 So. 2d 498, 505 (Miss. 1971), where the Mississippi Supreme Court explained that the primary insurance must be exhausted before the excess insurance is available.

### B.   Defendant State Auto's Motion in Limine

State Auto asserts that, to the extent the ownership of the Dodge Ram is important in this case, it is to be determined by the Title, which shows the truck was owned by B&G Wood. State Auto claims that any affidavit or proposed testimony about the intentions of the owner of B&G Wood about what he "might have done, or intended to do" with the Dodge Ram, is irrelevant, prejudicial, and confusing to the relevant issues. Additionally, says State Auto, the issue of "ownership" is, a legal issue for this court to determine.

State Auto, pointing to its theories above, asks this court to strike, and not consider the Affidavit of Donald Grantham about what he "thought or intended to do" with the Dodge. Further, says State Auto, this court should not allow any testimony about the intention of the owner of B&G Wood with respect to ownership of the Dodge. To the extent this case results in a jury trial, State Auto argues that testimony about the intent of ownership of the Dodge Ram would not be relevant, and that any probative value of such evidence is substantially outweighed by the danger it presents of unfair prejudice, confusion of issues or misleading the jury. Finally, argues State Auto, such testimony also impermissibly seeks to give a legal opinion about ownership of the Dodge Ram.

This court notes, however, that under Mississippi law, title to the vehicle is a *rebuttable presumption* as to ownership.  *Estate of Brown v. Brown*, No. 2018-CA-00702-COA, 2019 WL 6487518, at *3 (Miss. Ct. App. Dec. 3, 2019), reh'g denied (Apr. 7, 2020).  State Auto seeks to prevent Wesco from submitting proof that rebuts B&G Wood's ownership of the Dodge Ram. The Mississippi Supreme Court explained that "[t]here is no question that [the sole shareholder] had the authority to sign the option agreement and bind [his company] to the consideration that was given for the option."  *Creely v. Hosemann*, 910 So. 2d 512, 519 (Miss. 2005). Grantham, as the

sole owner of B&G Wood, had the authority to remove the Dodge Ram from the policy insuring B&G Wood, and to add it to his personal automobile insurance policy.

Grantham testified via affidavit that he bought the Dodge Ram on December 22, 2014 "as [his] personal vehicle not for any of my businesses."  [Docket no. 1-1 at 1, ¶¶2-3].  Nevertheless, the Purchase Agreement, signed by Grantham (the President and 100% owner of B&G Wood, Inc.), identifies B&G Wood as the Buyer.  [Docket no. 37-2].  Grantham testified also that he "did not realize the [Dodge Ram] was being titled to [his] company, B&G Wood, Inc." despite the fact that the Application for Certificate of Title (signed by Grantham) clearly identified B&G Wood as the owner.

In further support of his testimony that the Dodge Ram was personally owned by him, Grantham testifies that he transferred the Dodge Ram to the State Auto Policy on July 13, 2018. [See Docs. 1-1 at 1, ¶5; 1-2].  Grantham also testifies that, as the personal owner of the Dodge Ram, he gave permission to Pruitt, an employee of B&G Transport, to use the Dodge Ram at the time of underlying accident.  [Docket no. 1-1 at 2, ¶8].

This court finds that although the issue of whether Title to a vehicle imputes ownership of that vehicle to the holder involves a legal analysis, Graham's personal narrative regarding his alleged intent as to the ownership of the vehicle requires a fact-based analysis. Graham, as the owner of B&G Wood, had the authority to add or remove the Dodge Ram from a given insurance policy. Whether Graham committed a "mistake" when he failed to remove B&G Wood from the Certificate of Title requires a credibility analysis by a trier of fact. This court finds that the probative value of such first-hand testimony sufficiently outweighs any dangers of unfair prejudice, confusion of issues, or misleading the jury.

## V.     CONCLUSION

This court has considered all the submissions of the parties and is persuaded that genuine disputes of material facts permeate this litigation. These disputed issues of fact must be resolved by a trial of fact.  Further, summary judgement is not the appropriate time for this court to weigh evidence or determine the credibility of witness. Accordingly, this court must **DENY** the pending ***Motions for Summary Judgment* [Docket nos. 29, 44, and 67].**

It is further ORDERED that **State Auto's** *Motion in Limine* **[Docket no. 53]** hereby is **DENIED** without prejudice for the reasons set forth above.

Finally, the parties are directed to meet with the Magistrate Judge to outline the future actions for these proceedings.

SO ORDERED, this the 25th day of March, 2022.


**/s/HENRY T. WINGATE**
UNITED STATES DISTRICT JUDGE